# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| JAMES SMITH, | ) | |
| Individually, and purportedly on behalf of | ) | |
| All Others, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  2:24-cv-4149 |
| | ) | |
| AMERICAN DETECTIVE SERVICES, INC. et al.,) | | |
| | ) | Circuit Court of Cole County, Missouri |
| and | ) | Cause No.: 24AC-CC06481 |
| | ) | |
| SCOTTSDALE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

COMES NOW Defendant Scottsdale Insurance Company ("Scottsdale"), by and through

the undersigned counsel, pursuant to 28 U.S.C. § 1332, § 1441, § 1446, and § 1453 and files this

Notice of Removal of the above lawsuit, originally filed in the Circuit Court of Cole County, State

of Missouri, and in support of its Notice of Removal, hereby states as follows:

i

# TABLE OF CONTENTS

Table of Contents .................................................................................................... ii

Table of Authorities ............................................................................................... iii

I.      Introduction .................................................................................................. 1

II.     Parties .......................................................................................................... 3

III.    Factual and Procedural Background ............................................................ 3

    A.    Arbitration Award and Judgment ............................................................. 3

    B.    Prior Declaratory Judgment Action ......................................................... 5

    C.    Plaintiff Smith's Prior Garnishment ........................................................ 6

    D.    The Current Garnishment Action ............................................................. 7

IV.     Argument ..................................................................................................... 8

    A.    Applicable Legal Standard for Removal under CAFA .............................. 8

    B.    Smith's Garnishment Action is a "Class Action" under CAFA. ................ 8

    C.    Minimal Diversity is Present. ................................................................. 10

    D.    The Amount in Controversy Exceeds $5 million. ................................... 10

    E.    Removal is also proper under 28 U.S.C. § 1332 and 28 U.S.C. § 1446. ......... 15

Conclusion ............................................................................................................ 18

**Cases**

*Allen v. Bryers*, 512 S.W.3d 17 (Mo. 2016) ................................................................ 15

*Baker v. Ocean*, 18 LLC, 2019 WL 5079397 (W.D. Mo. Oct. 10, 2019) ..................... 15

*Cleartrac, LLC v. Lanrick Contractors, LLC*, 432 F. Supp. 3d 648 (E.D. La. 2020) .................. 13

*Couzens v. Donohue*, 854 F.3d 508 (8th Cir. 2017) ...................................................... 17

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) ..................... 10

*Farmers Ins. Co. v. McClain*, 603 F.2d 821 (10th Cir. 1979) ....................................... 13

*Home Depot U.S.A., Inc. v. Jackson*, 139 S.Ct. 1743 (2019) ......................................... 10

*Jeschke AG Service, LLC v. Bell*, 652 S.W.3d 305 (Mo. App. W.D. 2022) .................. 18

*O'Shaughnessy v. McClatchy Co.*, 2013 WL 12203246 (W.D. Mo. July 17, 2013) ..... 15

*Peraton Gov't Commc'ns, Inc. v. Hawaii Pac. Teleport L.P.*,

    No. CV 20-00287 JMS-WRP, 2021 WL 767854 (D. Haw. Feb. 26, 2021) ............. 13

*Perez v. Foremost Ins. Co.*, 2018 WL 2473573 (W.D.N.Y. June 4, 2018) ................... 13

*Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981 (8th Cir. 2019) ................. 11

*Raskas v. Johnson & Johnson*, 719 F.3d 884 (8th Cir. 2013) ........................................ 8

*Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817 (8th Cir. 2011) ................................ 14

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ................. 12

*Shattuck Pharm. Mgmt., P.C. v. Prime Therapeutics, LLC*,

    2021 WL 2667518 (W.D. Okla. 2021) ...................................................................... 16

*Snider v. State Farm Mut. Auto. Ins. Co.*, 360 F. Supp. 929 (S.D. W. Va. 1973) ....... 13

*Spath v. Norris*, 281 S.W.3d 346 (Mo. App. W.D. 2009) ............................................ 17

*Thompson v. R.J. Reynolds Tobacco Co.*, 760 F.3d 913 (8th Cir. 2014) ...................... 17

#31674838 v3

*Waters v. Ferrara Candy Co.*, 873 F.3d 633 (8th Cir. 2017) ........................................................ 11

*Waters v. Home Depot USA, Inc.*, 446 F. Supp. 3d 484 (E.D. Mo. 2020).................................... 11

*Williams v. Emp'rs Mut. Cas. Co.*, 845 F.3d 891 (8th Cir. 2017)............................... 2, 8, 9, 12, 18

**Statutes**

28 U.S.C. § 1332(d)(1) ......................................................................................................... 9

28 U.S.C. § 1332(d)(2) ....................................................................................................... 10

28 U.S.C. § 1453(b) .............................................................................................................. 8

**Other Authorities**

Wright & Miller, Interest and Costs, 14AA Fed. Prac. & Proc. Juris. § 3712 (4th ed.) ............... 13

# I.    INTRODUCTION

1.      This lawsuit involves issues that these parties previously litigated and which were decided in Scottsdale's favor by the Honorable Beth Phillips in Case Number 5:22-cv-06049. Specifically, therein, Scottsdale was awarded summary judgment when Judge Phillips declared that Scottsdale policy numbers CPS3062449[1], CPS2217911, CPS2424507, CPS2710396 and CPS3185703 afford no coverage for the underlying arbitration award and class action judgment. Plaintiff Smith appealed Judge Phillips' decision and ultimately dismissed his appeal, with prejudice, prior to the appeal being argued or submitted to a panel of Eighth Circuit judges.

2.      With this background, Plaintiff Smith has now improperly filed yet another equitable garnishment action in Cole County, Missouri, once again seeking to recover for the same underlying arbitration award and class action judgment that Judge Phillips has already declared that the Scottsdale policies do not apply to.

3.      Plaintiff once again claims that Scottsdale failed to provide a defense to ADS for the underlying class action claims, resulting in the parties' entry into a non-execution agreement and purported arbitration of the class claims of more than 22,000 people under the Fair Credit Reporting Act (though the absent class members did not have arbitration agreements and appear to have never even been provided notice), and resulting judgment confirming this arbitration award in excess of $54 million plus 9.0% post-award interest.

---

[1] In addition to being litigated in Case Number 5:22-cv-06049, Scottsdale Policy No. CPS3062449 was also litigated by Plaintiff in his prior garnishment action with Missouri Case No. 24AC-CC01832. That action was removed to this Court and a remand order was issued, also by Judge Phillips. However, the remand was stayed pending resolution of Scottsdale's appeal of the remand in Appeal Number 22-3436. Scottsdale's appeal was ultimately dismissed upon Plaintiff's agreement to dismiss his separate appeal and was followed by Plaintiff's dismissal with prejudice of his garnishment claims in the remanded garnishment case with Case No. 24AC-CC01832-01.

1

4.     This case is removable under the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1453. Removal is proper under CAFA if the matter: (1) is a class action involving 100 or more people; (2) involves "minimal diversity"; and (3) if the amount in controversy exceeds $5 million. Those elements are undeniably satisfied in this action.

5.     Here, the amount in controversy prong is satisfied as Plaintiff specifically seeks to recover $2,000,000.00 in policy funds under two separate Scottsdale policies with policy numbers CPS2217911 and CPS2424507. Plaintiff further seeks to recover post-judgment interest at a rate of 9% per annum on the $54,064,000.00 judgment entered by the Missouri Circuit Court on September 11, 2023, currently totaling $4,050,000.00, at minimum[2]. In addition to these amounts, Plaintiff also seeks to recover his costs and other undescribed pecuniary losses allegedly resulting from Scottsdale's claimed negligent misrepresentations.

6.     Further, under binding Eighth Circuit precedent in *Williams v. Employers Mutual Casualty Co.*, 845 F.3d 891 (8th Cir. 2017), this is a removable "class action" under CAFA involving more than 100 claimants. Plaintiff Smith is solely seeking to recover insurance proceeds for the "judgment" he obtained in the capacity of a purported class representative of more than 22,000 people pursuant to Missouri Rule 52.08, the analogue to Rule 23.

7.     Lastly, there is minimal diversity. Plaintiff is a citizen of Missouri. Scottsdale is a citizen of Ohio. ADS is a citizen of North Carolina. All parties are diverse.

---

[2] This differs from Plaintiff's prior garnishment petition, which was remanded by this Court in Case Number 2:22-cv-04115-BP, in that Plaintiff in the prior action sought coverage under just one Scottsdale policy and did so at a time when the interest at issue totaled, at most, $1,500,000.00, which the Court found did not result in the amount in controversy exceeding $5,000,000.00. Indeed, unlike the prior case, Plaintiff has not argued on the face of his petition that CAFA jurisdiction cannot attach, in stark contrast to the prior action and directly supporting the conclusion that federal jurisdiction exists.

#31674838 v3

8.      Additionally, the case is removable under traditional diversity jurisdiction as well because all parties are diverse and the amount in controversy exceeds $75,000.00.

## II.      PARTIES

9.      Scottsdale is an insurance company incorporated, organized, and existing under the laws of the State of Ohio with its principal place of business in the State of Ohio, and it is therefore a corporate resident and citizen of the State of Ohio.

10.     Defendant American Detective Services ("ADS") is an incorporated company existing under the laws of the State of North Carolina, with its principal place of business in the State of North Carolina. Therefore, ADS is a corporate resident and citizen of the State of North Carolina.

11.     Plaintiff James Smith is an individual who, upon information and belief, is a resident and citizen of the State of Missouri.

## III.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Arbitration Award and Judgment

12.     On November 23, 2020, Plaintiff Smith filed a putative class action lawsuit in the Circuit Court of Clinton County, Missouri, bearing case Number 20CN-CC00069, "on behalf of all similarly situated individuals" alleging three putative classes "suffered statutory damages under the FCRA when the Defendant failed to comply with the requirements of 15 U.S.C. § 1681b(b)(1), 15 U.S.C. § 1681b(b)(3), and 15 U.S.C. § 1681k, which entitled him and the putative classes to statutory and punitive damages per 15 U.S.C. § 1681m." (Exhibit A, State Court File, Petition, ¶¶ 8-9).

13.     On or around February 10, 2022, Plaintiff Smith and Defendant ADS purportedly "entered into an agreement to arbitrate" their dispute. (Exhibit B, Arbitration Agreement). Upon

#31674838 v3

information and belief, other than Plaintiff Smith, none of the other putative "class members" had arbitration agreements with Defendant ADS. Nevertheless, Plaintiff Smith purportedly entered the arbitration agreement "individually and on behalf of all others." *Id*. The arbitration agreement was signed by plaintiff James Smith only, and he is the only claimant named in the agreement. *Id*.

14.     On February 28, 2022, Plaintiff voluntarily dismissed his claims, and the claims of the purported classes, in their entirety without prejudice, following his entry into a non-execution agreement with ADS. To date, Scottsdale still has not been furnished with a copy of this non-execution agreement.

15.     Less than one month later, on March 4, 2022, Plaintiff and Defendant ADS reportedly submitted their dispute to "binding arbitration" before Miles Sweeney under "Alaris' Arbitration Rules." (Exhibit C, Arbitration Award). On April 4, 2022, the Arbitrator issued his Arbitration Award. *Id*. at 1. In so doing, the Arbitrator purported to simultaneously grant Plaintiff Smith's request to certify a class of more than 22,000 people pursuant to Missouri Rule 52.08 and enter a damages award for more than $54 million plus "post-award interest in the amount of 9% from the date of this award." (*Id*. at 6-16). This class purportedly encompassed claims from "the period from November 15, 2015 through October 31, 2019." (*Id*. at 5).

16.     On April 13, 2022, Plaintiff Smith filed a petition to confirm the arbitration award in the Circuit Court of Clinton County, which included a proposed judgment. (Exhibit D, Docket Sheet for Case No. 22CN-CC00019). The next day, the Court signed the proposed judgment confirming the arbitration award. (Exhibit E, April 14, 2022 Judgment). The judgment provided:

> "The Court incorporates the arbitrator's award into this judgment and this judgment constitutes the final judgment of the Court. The Court further orders that interest on the award shall run at 9% per annum as ordered in the award and shall be calculated as running from the date of the award."

(Ex. E ¶ 8).

17. Plaintiff Smith and Defendant ADS did not provide Scottsdale notice of this arbitration award, the newly filed lawsuit seeking confirmation of the arbitration award, or the judgment confirming the award. Instead, Scottsdale discovered this on Missouri Case.net.

18. Scottsdale attempted to intervene but was denied and the final judgment was entered by the Circuit Court on September 11, 2023.

**B.     Prior Declaratory Judgment Action**

19. On May 4, 2022, Scottsdale filed a complaint for declaratory judgment with this Court requesting a declaration and judgment declaring no coverage is available to Defendant ADS under Scottsdale policy numbers CPS3062449, CPS2217911, CPS2424507, CPS2710396 and CPS3185703.

20. Within the Complaint for Declaratory Judgment, Scottsdale specifically addressed Sections A and B of the above referenced commercial general liability (CGL) policies and further addressed the Errors and Omissions (E & O) coverage parts of the policies as well, arguing that no coverage existed under any of the policies for the arbitration award and/or judgment at issue. (Exhibit F, Scottsdale's Complaint for Declaratory Judgment, ¶¶ 7-14, 76-87).

21. On February 21, 2023, Scottsdale moved for summary judgment seeking a ruling from the Court that "there is no coverage for the underlying Judgment, Arbitration Award or any of the claims or damages alleged therein, [and] that Scottsdale has no duty to indemnify ADS for the arbitration award or any related judgment". (Exhibit G, Scottsdale's Motion for Summary Judgment, p. 2).

22. On March 28, 2023, Plaintiff Smith and Defendant ADS filed Answers and Affirmative Defenses to Scottsdale's First Amended Complaint. (Exhibit H, Plaintiff Smith's Answer to Scottsdale's First Amended Complaint; Exhibit I, Defendant ADS's Answer to

5

Scottsdale's First Amended Complaint). Therein, neither Plaintiff Smith nor Defendant ADS raised any of their current coverage arguments as affirmative defenses in opposition to Scottsdale's First Amended Complaint for Declaratory Judgment on the policies.

23.     On March 28, June 14 and June 28, 2023, Plaintiff Smith and Defendant ADS filed memorandums of law in opposition to Scottsdale's motion for summary judgment on all five Scottsdale policies. (See Exhibits J, K, L). Therein, neither Plaintiff Smith nor Defendant ADS raised any of their current coverage arguments as affirmative defenses in opposition to Scottsdale's First Amended Complaint for Declaratory Judgment on the policies.

24.     On August 30, 2023, the Court entered summary judgment in Scottsdale's favor on the policies and declared, "Scottsdale is **GRANTED** summary judgment on its request for declaratory judgment, and the Court declares that Scottsdale is not obligated to indemnify ADS for its liability on the Arbitration Award".  (Exhibit M, Order Granting Scottsdale's Motion for Summary Judgment).

25.     Both Plaintiff Smith and Defendant ADS thereafter appealed Judge Phillips' summary judgment award in Scottsdale's favor, but, after briefing, they dismissed their appeals, with prejudice, before oral argument and before the appeals were assigned to panels.

**C.     Plaintiff Smith's Prior Garnishment**

26.     On June 7, 2022, Plaintiff Smith filed a prior equitable garnishment action under RSMo. § 379.200 in the Circuit Court of Cole County with case number 22AC-CC01832.

27.     In the prior garnishment action, Plaintiff Smith alleged that the Scottsdale policy with policy number CPS3062449 and a limit of liability of $1,000,000.00, provided coverage to ADS for the underlying state court judgment.

6

28.     The prior equitable garnishment action was subsequently removed, remanded and ultimately dismissed with prejudice after Scottsdale was awarded summary judgment in the above-described declaratory judgment action.

**D.     The Current Garnishment Action**

29.     On July 29, 2024, Plaintiff Smith, yet again, filed an equitable garnishment action in the Circuit Court of Cole County under RSMo. § 379.200. Scottsdale has not yet been served with the summons and lawsuit for this action but nevertheless removes it within 30 days of its filing, such that this notice of removal is timely filed. A copy of the state court file has been attached to this Notice of Removal as **Exhibit A.**

30.     Plaintiff Smith sets forth two causes of action: (1) to garnish the separate $1,000,000.00 policy limits of two policies issued by Scottsdale to ADS, specifically Policy Numbers CPS2217911 and CPS2424507, along with post-judgment interest and costs; and (2) for negligent misrepresentation.[3]

31.     Subject to the terms, provisions, definitions, limitations, and exclusions, the Scottsdale policies each provide commercial general liability and errors and omissions coverage with an each claim limit of liability of $1,000,000.00 and a general aggregate limit of liability of $2,000,000.00. Thus, collectively, the policies implicated and subject to this suit afford policy

---

[3] While Plaintiff again purports to limit his claims for equitable garnishment to the limits of the two aforementioned policies and the post-judgment interest on the judgment, the fact remains that the arbitrator's finding that the class included a period from November 2015 to October 2019 implicates five separate policy periods for the five separate insurance policies identified by Scottsdale in its Complaint for Declaratory Judgment. Plaintiff's actions in filing yet another garnishment action confirms Scottsdale's prior assertions that Plaintiff's true garnishment efforts are to seek coverage under each Scottsdale policy and that the purported limitation is nothing more than a bad faith attempt to avoid establishing federal jurisdiction.

7

limits that total $5,000,000.00. In addition, each of the policies have the following supplementary payments provision providing for the payment of post-judgment interest:

> **SUPPLEMENTARY PAYMENTS**
>
> We will pay, with respect to any "claim" we investigate or settle, or any "suit" against an insured we defend: …
>
> **5.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

## IV.     ARGUMENT

### A.     Applicable Legal Standard for Removal under CAFA.

32.     CAFA confers federal jurisdiction over class actions when "1) there is minimal diversity; 2) the proposed class contains at least 100 members; and 3) the amount in controversy is at least $5 million in the aggregate." *Raskas v. Johnson & Johnson*, 719 F.3d 884, 886 (8th Cir. 2013). A class action meeting these requirements may be removed to federal court. 28 U.S.C. § 1453(b). Other defendants need not consent to removal under CAFA. *Id.*

33.     This case is removable under CAFA because: (1) it is a "class action" involving more than 100 class members under binding Eighth Circuit precedent in *Williams*; (2) minimal diversity is present; and (3) the amount in controversy exceeds $5 million. *See Williams*, 845 F.3d at 898-902 (holding that because plaintiff "brought this action on behalf of a class previously certified under a state-law analogue to Rule 23, the action was necessarily 'filed under' Rule 23 or a state-law analogue" for purposes of removal.)

### B.     Smith's Garnishment Action is a "Class Action" under CAFA.

34.     Section 1332(d)(1) defines "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action." 28

#31674838 v3

U.S.C. § 1332(d)(1). CAFA envisions liberal removal rules to effectuate its purposes, which the Eighth Circuit has consistently applied in its rulings on the statute. "In enacting CAFA, Congress expressed concern about lawyers who 'game' the procedural rules and keep nationwide or multi-state class actions in state courts whose judges have reputations for readily certifying classes and approving settlements without regard to class member interests." *Williams*, 845 F.3d at 901. "Thus, Congress emphasized that 'class action' should be interpreted liberally.'" *Id*. "Generally speaking, lawsuits that resemble a purported class action should be considered class actions for purposes of applying [CAFA]." *Id*.

35.     The Eighth Circuit has already held that an equitable garnishment action seeking to recover for an underlying class action judgment against an insurer is a "class action" removable under CAFA. In *Williams*, a class of residents of Autumn Hills sued Collier for allegedly contaminated drinking water. *Williams*, 845 F.3d at 894-95. Collier demanded defense and indemnity from multiple insurers, each of whom declined. *Id*. at 895. Like here, Collier entered into a non-execution agreement with the class, whereby the class representative "agreed that if the class obtained judgment against Collier, the class's recovery would be limited to those insurance proceeds." *Id*. The state court found the class suffered bodily injury and property damage due to the contamination and awarded more than $80 million.

36.     Here, like *Williams*, Plaintiff Smith filed class action FCRA claims "individually and as class representative" against ADS. (Ex. A, Petition, ¶ 7-8). After entering into a non-execution agreement, Plaintiff and ADS proceeded to arbitration. The arbitrator purportedly certified a class of approximately 22,000 people across the country under Missouri Rule 52.08 and entered an award of more than $54 million plus post-award interest. The Circuit Court of Clinton County entered judgment confirming this class arbitration award. Like *Williams*, Smith seeks to

9

vindicate this class action judgment through his second attempt at an equitable garnishment action, and has added in an additional negligent misrepresentation claim. Because his ability to collect the underlying judgment is predicated on his status as a class representative, as in *Williams*, this case is a "class action" under CAFA. Plaintiff Smith even pleads in this petition that his claims arose out of ADS's "failure to obtain the necessary certifications, notices, and failure to provide copies of the reports to the various class members." (Exhibit A, Petition, ¶ 73).

### C. Minimal Diversity is Present.

37. CAFA vests district courts with diversity jurisdiction anytime there is minimal diversity—which occurs when at least one plaintiff and defendant reside in different states. *Home Depot U.S.A., Inc. v. Jackson*, 139 S.Ct. 1743, 1754 (2019). Plaintiff Smith is a citizen of Missouri. The defendants are citizens of states other than Missouri. Scottsdale is a citizen of Ohio. ADS is a citizen of North Carolina. Minimal diversity is therefore met. This is not an issue in dispute.

### D. The Amount in Controversy Exceeds $5 million.

38. CAFA confers federal jurisdiction over minimally diverse class actions when "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs…" 28 U.S.C. § 1332(d)(2). Generally, "when a defendant seeks federal-court adjudication [by removing a case to federal court], the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). However, if the plaintiff contests the defendant's allegation concerning the amount in controversy, Section 1446(c)(2)(B) requires "both sides to submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. at 88. "When a preponderance of evidence standard applies, 'the defendant's showing on the amount in controversy may rely on

#31674838 v3

reasonable assumptions,' and there is no demand at the early stages of removal to conclusively establish damages." *Waters v. Home Depot USA, Inc.,* 446 F. Supp. 3d 484, 491 (E.D. Mo. 2020). To make this showing, the defendant may rely on "reasonable deductions, reasonable inferences, or other reasonable extrapolations" to establish the amount in controversy. *Waters v. Ferrara Candy Co.,* 873 F.3d 633, 636 (8th Cir. 2017). Under this standard, removal is proper when "a fact finder might legally conclude" that recoverable damages meet the minimum amount in controversy. *Pirozzi v. Massage Envy Franchising, LLC,* 938 F.3d 981, 984 (8th Cir. 2019).

39.     The amount in controversy is met for two reasons: (1) the policy limits applicable to the underlying judgment are actually $5 million; and (2) post-award interest was imposed in the underlying lawsuit and, thus, may be considered for the amount in controversy. In short, even if this Court were to accept Plaintiff's position that they are only seeking the policy limits of $2 million applicable under two policies, the post-award interest, unequivocally requested and sought by Plaintiff and expressly pled in the petition, elevates the amount in controversy well over the $5 million required to remove a case under CAFA.

40.     First, Plaintiff Smith has alleged in his equitable garnishment petition that he is only seeking the policy limits of two separate policies. However, as already demonstrated by his duplicative filings to date, this is nothing more than an attempt to eliminate federal jurisdiction by engaging in piecemeal litigation – as Scottsdale informed the Court was the case in Scottsdale's prior removal pleadings. Plaintiff Smith's position presumes the class action claims only implicated the two policies referenced in his equitable garnishment petition, such that only two $2 million is at issue. However, as Scottsdale previously notified this Court, the arbitration award and judgment entered thereon unequivocally implicate five policy periods because they encompass claims from thousands of class members between November 2015 and October 2019. The

applicable time period implicates five separate policies, each with a limit of $1 million, thus totaling $5 million in applicable limits.

41.     "A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits". *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co*., 559 U.S. 393, 408 (2010) (plurality opinion of Scalia, J.). Thus, here, the underlying class action judgment resolved not only Smith's claims, but the claims of many others across five separate Scottsdale policy periods. *Williams*, discussed *supra*, makes clear that the Eighth Circuit looks to the true nature of the underlying proceeding when analyzing removal requirements, and is not fully bound by a Plaintiff's attempt to write the petition in a way that avoids removal. Thus, the limits across all policy periods, totaling $5 million, are at issue.

42.     With $5 million in policy limits clearly at issue in this equitable garnishment action, the claims for negligent misrepresentation and costs, even if determined to be nominal damages of a single dollar, illustrates that the amount in controversy is clearly over $5 million, the threshold required to remove a case under CAFA.

43.     Notwithstanding the above, Plaintiff's petition for equitable garnishment unequivocally seeks to recover post-judgment interest on the underlying judgment. Therefore, even if this Court were again to accept Plaintiff's position that $2 million in policy limits is the total amount of insurance proceeds at issue in this suit, Plaintiff's request for post-judgment interest elevates the amount-in-controversy well over $5 million.

44.     Post-award interest on the underlying judgment of 9% per annum must be included in calculating any amount-in-controversy. Although Section 1332(d)(2) provides the amount in controversy is "exclusive of interest and costs," it is well established that "when the subject matter

#31674838 v3

of the controversy happens to be or include the costs awarded in an earlier lawsuit, they may be considered in computing the jurisdictional amount." *Wright & Miller, Interest and Costs*, 14AA Fed. Prac. & Proc. Juris. § 3712 (4th ed.). Likewise, "if the judgment in one action includes interest, the amount in controversy in a suit on the judgment is measured by the amount of that first judgment, including the interest on it." *Id*. See also *Snider v. State Farm Mut. Auto. Ins. Co*., 360 F. Supp. 929, 931 (S.D. W. Va. 1973) ("This interest is not the interest identified in the phrase "exclusive of interest and costs" in 28 U.S.C. § 1332(a), relating to jurisdiction based on amount in controversy and diversity of citizenship. Interest on the judgment which the insurers are obligated to pay is liability imposed by law. It is a part of the total liability on which the action is based."); *Peraton Gov't Commc'ns, Inc. v. Hawaii Pac. Teleport L.P*., No. CV 20-00287 JMS-WRP, 2021 WL 767854, at *4 (D. Haw. Feb. 26, 2021) ("the 'costs' referred to in § 1332(a) refer to prospective costs incurred during the federal litigation, not 'costs' awarded in an underlying litigation"); *Cleartrac, LLC v. Lanrick Contractors, LLC*, 432 F. Supp. 3d 648, 658 (E.D. La. 2020) ("the interest that accrues on the unpaid first judgment may be included in determining the amount in controversy" on a suit seeking to enforce the judgment."); *Perez v. Foremost Ins. Co*., 2018 WL 2473573, at *2 (W.D.N.Y. June 4, 2018) ("[Section 1332(d)] excludes interest and costs that may be anticipated *in the federal action*."); *Farmers Ins. Co. v. McClain*, 603 F.2d 821, 823 (10th Cir. 1979) ("The phrase 'exclusive of interest or costs' in section 1332 obviously refers to interest or costs which *might* be awarded *in connection with the federal diversity proceedings*," not underlying lawsuits).

45.     Here, the underlying Clinton County judgment awarded interest of 9.0% per annum on the $54 million arbitration award, running from the date of the award itself (April 4, 2022). The interest that accrued from the time of the award to the date the garnishment proceeding was filed

is what is considered. "It is axiomatic the court's jurisdiction is measured either at the time the action is commenced or, more pertinent to this case, at the time of removal." *Schubert v. Auto Owners Ins. Co*., 649 F.3d 817, 822 (8th Cir. 2011). However, even taking the most conservative approach to the post-award interest issue and calculating the available post-judgment interest from the date the underlying judgment was entered, the post-judgment interest applicable to this suit would run from September 11, 2023 until the date of the filing of this garnishment action, July 29, 2024. Calculated using these overly conservative dates, and even using an overly conservative ten-month benchmark date, nearly three weeks prior to the filing of this garnishment action, a 9% per annum interest rate would equate to $4,050,000.00 in interest. This, in addition to taking Plaintiff's pursuit of the $2 million in available limits under the two policies results in Plaintiff having explicitly sought to recover an amount-in-controversy of $6,050,000.00, which is more than a million dollars higher than the amount-in-controversy requirement under CAFA to remove a case. There can be no doubt that the total amount sought by Plaintiff Smith, as expressly pled in this equitable garnishment petition, exceeds the $5 million threshold under CAFA.

46.    As the authorities cited above make clear, the phrase "exclusive of interest and costs" only applies to interest and costs from this proceeding because, unlike interest on the underlying judgment, interests and costs for this case are inherently speculative at this time. In contrast, as shown immediately above, the interest applicable to the underlying judgment Plaintiff is seeking to obtain in this suit and as expressly pled by Plaintiff, is quite easily ascertainable and clear.

47.    As repeatedly referenced herein, Plaintiff Smith acknowledges that the potentially applicable insurance proceeds include "post-judgment interest on the judgment". (Ex. A, Plaintiff's Petition, ¶ 78). Plaintiff cannot dispute this as he himself has pled as much. In *Allen*, the

Missouri Supreme Court ordered an insurer to pay post-judgment interest on the entire underlying $16 million judgment in a garnishment action seeking smaller policy limits, just as Plaintiff Smith is seeking here. *Allen v. Bryers*, 512 S.W.3d 17, 40 (Mo. 2016). The court reasoned that the policy's supplementary payments provision required the insurer to pay "All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance." *Id*.

48.     As outlined previously, the supplementary payments provision in *Allen* is identical to the provision contained in the Scottsdale policies. As the post-judgment interest included in the underlying judgment is expressly sought by Plaintiff, is covered under the Scottsdale Policy, and must be included in calculating the amount-in-controversy, the $5 million threshold for removal under CAFA is undisputedly met. This is without dispute, in spite of Plaintiff's efforts to keep this action out of federal court by attempting to garnish under only two policies, attempting to limit the damages sought to the $2 million in limits available under the policies expressly outlined by Plaintiff.

**E.     Removal is also proper under 28 U.S.C. § 1332 and 28 U.S.C. § 1446.**

49.     In addition to CAFA jurisdiction, this case is also removable because traditional diversity jurisdiction exists as well.

50.     A party may remove a case under CAFA or traditional diversity jurisdiction and Scottsdale is not limited to choosing one or the other. *See Baker v. Ocean, 18 LLC*, 2019 WL 5079397, at *5 (W.D. Mo. Oct. 10, 2019) (recognizing traditional diversity jurisdiction may exist even if CAFA jurisdiction does not); *O'Shaughnessy v. McClatchy Co.*, 2013 WL 12203246, at *1 (W.D. Mo. July 17, 2013) (noting traditional diversity jurisdiction was "an independent basis

for removal" aside from CAFA); *see also Shattuck Pharm. Mgmt., P.C. v. Prime Therapeutics, LLC*, 2021 WL 2667518, at *2 (W.D. Okla. 2021) ("CAFA, however, does not displace a party's ability to remove under traditional diversity principles.")

51. As previously outlined, the Parties to this action are completely diverse and the amount-in-controversy far exceeds $75,000.00.

52. For purposes of removal based on diversity of citizenship, Plaintiff James Smith is a resident and citizen of the State of Missouri.

53. Scottsdale is an insurance company incorporated, organized, and existing under the laws of the State of Ohio with its principal place of business in the State of Ohio, and it is therefore a corporate resident and citizen of the State of Ohio.

54. Defendant ADS is an incorporated company existing under the laws of the State of North Carolina, with its principal place of business in the State of North Carolina. Therefore, ADS is a corporate resident and citizen of the State of North Carolina.

55. Therefore, the Parties to this action are completely diverse and this action is removable so long as the amount-in-controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00).

56. The amount-in-controversy far exceeds the $75,000.00 requirement from the plain language of Plaintiff Smith's petition. Plaintiff Smith has specifically pled that he is seeking "the policy limits of CPS2217911 and CPS2424507 which are $1,000,000 each and post-judgment interest on the judgment." (See Exhibit A, Petition, ¶ 78).

57. As such, this plain statement contained in Petition establishes the amount-in-controversy exceeds the $75,000.00 requirement without the need for any further analysis.

#31674838 v3

58.     Additionally, Scottsdale notes that according to Missouri Case.Net, separate defendant ADS has not been served with the Petition, has not entered its appearance and as such its consent is not required for removal. (See Exhibit N, 24AC-CC06481 Docket Sheet).

59.     Moreover, any argument regarding consent being necessary as to ADS is irrelevant because ADS has been fraudulently joined as a party. When a party is fraudulently joined, their consent is not needed to remove an action. *See Couzens v. Donohue*, 854 F.3d 508, 513 (8th Cir. 2017).

60.     The Eighth Circuit has previously stated that a party has been fraudulently joined when there is "no reasonable basis in fact and law" to support a claim against it. *Thompson v. R.J. Reynolds Tobacco Co.*, 760 F.3d 913, 915 (8th Cir. 2014). In *Thompson*, the court found that res judicata barred the claims asserted against two of the defendants, thus they were fraudulently joined to the action. *See id*. at 918.

61.     Likewise, here, any claim Plaintiff Smith has against ADS for equitable garnishment is barred under the doctrine of res judicata and the prohibition against claim splitting. Missouri courts recognize a prohibition against claim splitting, denoted as a type of *res judicata*, that applies when (1) the separate actions brought arise out of the same act or transaction; and (2) whether the parties, subject matter, and evidence necessary to sustain the claim are the same in both actions. *Spath v. Norris*, 281 S.W.3d 346, 350 (Mo. App. W.D. 2009).

62.     As outlined above, Scottsdale has already secured judgment as to Plaintiff's claims against ADS under the policies and Plaintiff has separately dismissed, with prejudice, claims for garnishment in Missouri State Court. Therefore, the garnishment claim asserted by Plaintiff in this action against ADS is barred and improper and establishes that ADS has been fraudulently joined such that its consent to removal is unnecessary.

#31674838 v3

63.     Plaintiff's current garnishment claims against ADS are claims that should have been asserted in the initial garnishment action, a garnishment action that has now been dismissed with prejudice. Plaintiff Smith's efforts are in direct violation of the prohibition against claim splitting, which "bars a litigant from asserting claims that should have been asserted in previous litigation." *See Jeschke AG Service, LLC v. Bell*, 652 S.W.3d 305, 313 (Mo. App. W.D. 2022).

64.     Additionally, the second prong of the applicable test is met because the parties to the prior garnishment action and the present garnishment action are identical, as is the issue to be decided -- whether coverage exists under the Scottsdale policies issued to ADS. Indeed, this is the very issue that has already been litigated and decided in Scottsdale's favor, prompting Plaintiff's dismissal with prejudice  of the prior garnishment action.

65.     Plaintiff Smith has fraudulently joined ADS as a Defendant in this garnishment action as it has no viable claim against ADS or Scottsdale under the garnishment statute. Any claim Plaintiff Smith had should have been raised in the initial garnishment proceeding which has since been dismissed with prejudice. Even though Plaintiff Smith has no cause of action against ADS, he has included them as a Defendant nonetheless, clearly in an effort to attempt to avoid removal of this litigation to federal court. Such efforts are futile as ADS is a fraudulently joined party, thereby waiving any requirement that ADS consent to removing this action.

<u>CONCLUSION</u>

The CAFA elements required to remove a case are undisputedly met. Under binding precedent in *Williams*, this is a "class action" involving more than 100 claimants. Minimal diversity is present as Plaintiff Smith is diverse from both defendants. The minimum amount-in-controversy is met as Plaintiff seeks to recover in excess of $5,000,000.00 based on Plaintiff's prayer for recovery of $2,000,000.00 in policy limits, plus more than $4,000,000 worth of post-

18

judgment interest, costs and pecuniary damages for alleged negligent misrepresentations. Further, the case is removable under traditional diversity jurisdiction as well because the parties are fully diverse and the amount in controversy exceeds $75,000.00. Federal jurisdiction exists under either theory.

Respectively submitted,

**WATTERS, WOLF, BUB & HANSMANN, LLC**

*/s/ Lucas J. Ude*
Russell F. Watters, MO #25758
John D. Cooney, MO #61080
Lucas J. Ude, MO #66288
600 Kellwood Parkway, Suite 120
St. Louis, Missouri 63017
(636) 798-0570 - Telephone
(636) 798-0693 – Facsimile
rwatters@wwbhlaw.com
jcooney@wwbhlaw.com
lude@wwbhlaw.com
*Attorneys for Scottsdale Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served by Regular U.S. Mail and e-mail this **28 August 2024**, on the counsel of record listed below:

Tom Hershewe
Lauren Dollar
Dollar Burns Becker & Hershewe
1100 Main Street, Suite 2600
Kansas City, MO 64105
tom@dollar-law.com
lauren@dollar-law.com
*Counsel for Defendant American*
*Detective Services*

Jayson A. Watkins
Charles Jason Brown
Brown & Watkins, LLC
301 S. US 169 Hwy
Gower, MO 64454
watkins@brownandwatkins.com
brown@brownandwatkins.com
*Counsel for Plaintiff James Smith*

Joshua David Scott
The Law Office of Joshua Scott, LLC
1100 Main Street
Suite 2820
Kansas City, MO 64105
816-876-2600
816-221-8763 (fax)

19

joshua@joshuascottlaw.com
*Counsel for Defendant American*
*Detective Services*

/s/ Lucas J. Ude

20